Bill MADDOX, Bill Grace, Jerry Frisby, Melba Riggs,
and Charles Beasley  *v.*  CITY of FORT SMITH

06-635                                                         251 S.W.3d 281

Supreme Court of Arkansas
Opinion delivered March 1, 2007

   *The Evans Law Firm, P.A.*, by: *Marshall Dale Evans, Stephanie
Dzur*, and *Charles N. Williams*; *Hirsch Law Firm, P.A.*, by: *E. Kent
Hirsch*; *Jack, Lyon & Jones*, by: *Eugene G. Sayre*; *Michael Hodson*, for
appellants.

*Daily & Woods, PLLC,* by: *Jerry L. Canfield,* for appellee.

JIM GUNTER, Justice. This appeal arises from a Sebastian County Circuit Court order dismissing the illegal-exaction and unlawful-transfer claims made by appellants, Bill Maddox, Bill Grace, Jerry Frisby, Melba Riggs, and Charles Beasley, on behalf of themselves and citizens, taxpayers, and utility ratepayers, against appellee, the City of Fort Smith ("City"). The circuit court dismissed appellants' complaint, finding that the transfers of funds challenged by the unlawful-transfer claims were lawful and did not violate Ark. Code Ann. § 14-234-214 (Repl. 1998). We affirm.

A recitation of the facts is found in our opinion, *Maddox v. City of Fort Smith,* 346 Ark. 209, 56 S.W.3d 375 (2001), from the previous appeal. In April of 1994, the Fort Smith Board of Directors approved a resolution endorsing the passage of a one-percent sales-and-use tax for the City's share of a countywide sales tax to be used for a specific list, including waste water improvements and sanitation. On April 16, 1996, the City's Board of Directors, pursuant to Ordinance No. 15-96, authorized a two-million-dollar transfer from both the water-and-sewer operating fund and the sanitation fund, which are both maintained by the City, to be transferred to the general fund to build a new police facility.

On August 31, 2000, appellants filed an illegal-exaction lawsuit under Article 16, §§ 11 and 13, of the Arkansas Constitution, claiming, inter alia, that the transfers transformed the user fees collected in the City's water-and-sewer fund and sanitation fund into illegal taxes. The circuit court entered summary judgment in favor of the city. On appeal in *Maddox, supra,* we affirmed the circuit court's grant of summary judgment on the illegal-exaction claim, holding that the resolution was not the law imposing a tax and that no funds were used for any purpose other than that authorized in the Sebastian County levying ordinance. We further affirmed the circuit court's grant of summary judgment on one unlawful-transfer claim, concluding it was barred by the statute of limitations. However, we reversed and remanded the circuit court's grant of summary judgment as to the appellants' unlawful-transfer claims arising out of the 1996 transfers of funds. *Id.* In *Maddox,* we stated:

> [T]he record reflects the following evidence regarding whether the transferred funds were unencumbered, or surplus. An affidavit

by Kara Bushkuhl, Finance Director of the City of Fort Smith, states that the $500,000 appropriation authorized in 1994 "was charged to surplus waterworks revenues of the Water and Sewer Operating Fund as defined and authorized by Ark. Code Ann. § 14-234-214(e)(3)(D)." Ms. Bushkuhl also states in the affidavit that the 1996 appropriations of $2,000,000 from the water and sewer operating fund and $2,000,000 from the sanitation operating fund were of "unencumbered surplus funds." However, Ms. Bushkuhl does not indicate that she used any statutory provision to determine whether a surplus existed in 1996. The statutory provision cited in her affidavit in connection with the 1994 appropriation, section 14-234-214(e)(3)(D), only indicates that a surplus can be used for other municipal purposes; whereas, the definition of "surplus funds" is set forth in Ark. Code Ann. § 14-234-214(e)(1): those funds "in excess of the operating authority's estimated cost of maintaining and operating the plant during the remainder of the fiscal year then-current and the cost of maintaining and operating the plant during the fiscal year next ensuing." This statutory definition of "surplus funds" is not referenced anywhere in Ms. Bush-kuhl's affidavit. Furthermore, the water and sewer operating fund reported a deficiency of $1,078,459 in fiscal year 1996 and $1,491,915 in fiscal year 1997. The sanitation operating fund also reported deficiencies of $617,188 in fiscal year 1996 and $359,306 in fiscal year 1997. Based upon this record, we conclude that a question of fact remains regarding whether "surplus funds," as defined in Ark. Code Ann. § 14-234-214(e)(1), existed in the City's utility and sanitation accounts prior to the 1996 transfers. We therefore reverse the trial court's grant of summary judgment on this point.

*Maddox*, 346 Ark. at 220, 56 S.W.3d at 382-83.

The case was remanded and tried on November 21, 2005. On December 12, 2005, the circuit court made the following rulings. First, the circuit court found that the funds generated by the county sales tax and deposited into the water-sewer fund and the sanitation fund never became surplus funds, as defined by Ark. Code Ann. § 14-234-214(e), and concluded that the reallocated funds were sales-tax revenues that could be used for any general municipal purpose. Second, the circuit court ruled that even if the sales-tax revenue were to be considered in the computation of surplus as defined by Ark. Code Ann. § 14-234-214(e), there was a surplus sufficient to make the distribution. Third, the circuit court found that the transfer of the funds from the sanitation fund

was not governed by Ark. Code Ann. § 14-234-214. Appellants timely filed their notice of appeal on January 9, 2006. From the December 12, 2005, order, appellants now bring their appeal.

For their first point on appeal, appellants argue the circuit court erroneously ruled that "surplus" was ambiguous under Ark. Code Ann. § 14-234-214. Specifically, appellants contend that the statute itself explains what surplus is. Appellants also assert that the circuit court improperly resolved the ambiguity in a manner that excluded certain revenue of the water-sewer fund from the calculation of surplus.

In response, the City argues that the circuit court correctly found that the transfer did not violate Ark. Code Ann. § 14-234-214(e)(1), claiming that the statute "does not apply to extraordinary funds that are deposited into the account by the governing body and not part of the rate structure." Specifically, the City makes three arguments. First, as a threshold matter, the City contends the circuit court properly found that the 1996 challenged reallocations were Sebastian County sales-tax revenues that we determined were subject to allocation for any municipal purpose. *Maddox, supra.* Second, the City maintains that our well established law-of-the-case doctrine prohibits this court from considering any issues decided in *Maddox, supra.* Third, the City argues that the circuit court's construction of Ark. Code Ann. § 14-234-214(e) was proper and should be upheld.

At the outset, we note that we previously held in *Maddox, supra,* that the Sebastian County ordinance generated the county sales-tax revenue that the City dispersed into the water-sewer and sanitation funds. We further acknowledged that the funds from the City's share of the county sales tax were approved by the voters for general municipal purposes. *Maddox,* 346 Ark. at 218, 56 S.W.3d at 381. Because we remanded the case for a determination of the issues now on appeal, we decline to address the City's law-of-the-case argument.

This appeal presents an issue of statutory interpretation. We review issues of statutory interpretation de novo, as it is for this court to decide what a statute means. *State Farm Mut. Auto. Ins. Co. v. Henderson,* 356 Ark. 335, 150 S.W.3d 276 (2004). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.* When reviewing issues of statutory interpretation, we are mindful that the first rule in

considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *State v. Britt*, 368 Ark. 273, 244 S.W.3d 665 (2006). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. When a statute is clear, however, it is given its plain meaning, and we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. We are very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

Arkansas Code Annotated § 14-234-214, the statute at issue, provides:

> (a) Rates for resident and nonresident consumers of a municipal waterworks system shall be fixed by the legislative body of the municipality.

> (b) The rates to be charged by the municipality must be adequate to:

> (1) Pay the principal of and interest on all revenue bonds and revenue promissory notes as they severally mature;

> (2) Make such payments into a revenue bond sinking fund as may be required by ordinance or trust indenture;

> (3) Provide an adequate depreciation fund and to provide the operating authority's estimated cost of operating and maintaining the waterworks system.

> (c) Rates fixed prior to the issuance of revenue bonds or notes may be reduced if authorized by the trust indenture or ordinance pertaining to the issuance. The rates shall not be reduced below the standards prescribed in this subchapter.

> (d) If a municipality subject to the provisions of this subchapter proposes to make additions to its system, which additions are to be financed by the issuance of revenue bonds or revenue promissory notes, within eighteen (18) months of the effective date of the rate,

then the legislative body of the municipality shall fix a rate to be effective immediately, which will be sufficient, in addition to the above requirements, to amortize the revenue bonds or revenue promissory notes with interest as they severally mature.

(e)(1) If any surplus is accumulated in the operation and maintenance fund of the waterworks system which shall be in excess of the operating authority's estimated cost of maintaining and operating the plant during the remainder of the fiscal year then-current and the cost of maintaining and operating the plant during the fiscal year next ensuing, the excess may be by the operating authority transferred to either the depreciation account or to the bond and interest redemption account, as the operating authority may designate.

(2) If any surplus is accumulated in the depreciation account over and above that which the operating authority shall find may be necessary for probable replacements needed during the then fiscal year, and the next ensuing fiscal year, the excess may be transferred to the bond and interest redemption account.

(3) If a surplus shall exist in the bond and interest redemption account, it may be applied by the operating authority, in its discretion, subject to any limitations in the ordinance authorizing the issuance of the bonds, or in the trust indenture:

(A) To the payment of bonds that may later be issued for additional betterments and improvements;

(B) To the purchase or retirement, insofar as possible, of outstanding unmatured bonds payable from the bond and interest redemption account, at no more than the fair market value thereof;

(C) To the payment of any outstanding unmatured bonds payable from the bond and interest redemption account that may be subject to call for redemption before maturity; or

(D) To any other municipal purpose.

With our rules of statutory construction in mind, we turn to the present case to determine whether Ark. Code Ann. § 14-234-214(e) is applicable. The circuit court ruled that the statute was

inapplicable because it was silent on the issue of whether nonoperating funds, or county sales-tax receipts, are considered surplus. Further, the circuit court found that the funds generated by the sales-tax and deposited into the water-sewer account never became surplus funds under Ark. Code Ann. § 14-234-214(e).

We agree with the circuit court's ruling on this issue. Here, section 14-234-214 is inapplicable to the case sub judice. Section 14-234-214 in its entirety deals with *rates* for "resident and nonresident consumers of a municipal waterworks system." The statute requires that the municipality set rates sufficient to meet the utility's operating and maintenance costs. Ark. Code Ann. § 14-234-214(a), (b). In the event that the utility's operating-and-maintenance costs are lower than anticipated, thereby resulting in a surplus of rate-derived funds, the statute sets out a hierarchy for the use of the surplus. If the municipality determines that the anticipated costs for the current and next fiscal years will result in a surplus of rate-derived funds, then the operating authority may transfer the excess to either a depreciation account or to a bond-and-interest redemption account. Ark. Code Ann. § 14-234-214(e)(1). Next, if a surplus exists in a bond-and-interest redemption account, the operating authority may apply the surplus to any of four enumerated purposes, including "any other municipal purpose." Ark. Code Ann. § 14-234-214(e)(3). The statute requires the municipality to charge rates sufficient to pay for the operation and maintenance of the waterworks system. When the utility operates efficiently or the maintenance costs are lower than expected, the operating authority may determine, under the guidelines set forth in section 14-234-214(e)(1), that there is a surplus of rate-derived funds; that is, there is a surplus of funds derived from rates assessed for the specific purpose of operating and maintaining the waterworks system. In sum, section 14-234-214(e) reflects the legislature's determination that certain fiscal requirements must be satisfied before funds obtained for a specific purpose may be transferred and applied to "any other municipal purpose." The entire statutory scheme rests on the fact that the funds are rate-derived for the specific purpose of operating and maintaining a municipal waterworks system.

Because the entire statute is based on rate-derived funds, the term, "surplus funds," as used in subsection (e), refers to the disposition of *rate-derived* surplus funds. Here, the revenue transferred into the water-sewer account was not rate-derived surplus; rather, it was the City's portion of county sales-tax

revenue that was authorized by a Sebastian County ordinance to be used for any municipal purpose. *Maddox*, 346 Ark. at 213, 56 S.W.3d at 377-78. Therefore, based upon our rules of statutory construction, we conclude that the statute is inapplicable to the present case involving the reallocation of any extraordinary non-operating funds into the City's water-sewer account. Accordingly, we hold that the circuit court correctly determined that the sales-tax funds deposited into the water-sewer account "did not ever become funds that were 'surplus' funds as defined by Ark. Code Ann. § 14-234-214(e)."

In view of our holding that the statute is inapplicable, we need not address appellant's arguments that section 14-234-214 applies to the sanitation fund. Moreover, appellant fails to cite any statute that prohibits transfers from the sanitation operating fund to the general fund or that establishes the sanitation operating fund as a separate, enterprise fund. Pursuant to Ark. Code Ann. § 14-232-103 (Repl. 1998) and Ark. Code Ann. § 8-6-211 (Supp. 2005), municipalities are authorized to operate solid-waste management systems. In that regard, municipalities are authorized, but not required, to impose reasonable rates for sanitation services. Ark. Code Ann. § 14-232-110 (Repl. 1998). Arkansas Code Annotated § 8-6-211(c) (Supp. 2005) authorizes municipalities to use funds "appropriated from *any available funds* for the . . . operation of a solid waste management system." *Id.* (Emphasis added.)

Here, the record reflects that generally accepted accounting principles in 1996 permitted the City's sanitation operating fund to be operated as part of its general fund. Thus, any transfer of surplus funds from the sanitation account would merely have been a transfer within the general fund. Accordingly, we affirm the circuit court's dismissal of appellant's claim challenging the legality of the 1996 transfer of funds from the City's sanitation operating fund to the City's general fund.

Affirmed.

DANIELSON, J., dissents.