Betsy R. DANNER *v.* MBNA AMERICA BANK, N.A.

06-1429                                                        255 S.W.3d 863

Supreme Court of Arkansas
Opinion delivered April 26, 2007

*Rice & Adams*, by: *Scott A. Scholl*, for appellant.

*Law Office of Stephen P. Lamb*, by: *Mac Golden*, for appellee.

JIM HANNAH, Chief Justice. This case involves the validity of an alleged arbitration agreement between appellant Betsy Danner and appellee MBNA America Bank, N.A. Danner appeals an order granting summary judgment and confirming an arbitration award in favor of MBNA. We reverse and remand to the circuit court.

The record reveals that a dispute arose between the parties concerning the non-payment of charges on an MBNA credit card issued to Danner. MBNA alleges that after Danner agreed to its original credit-card agreement, an amendment to the agreement was mailed to Danner requiring her to arbitrate any future dispute. The relevant language of the amendment is as follows:

> As provided in your Credit Card Agreement and under Delaware law, we are amending the Credit Card Agreement to include an Arbitration Section. Please read it carefully because it will affect your right to go to court, including any right you may have to have a jury trial. Instead, you (and we) will have to arbitrate claims. You may choose not to be subject to this Arbitration Section by following the instructions at the end of this notice. This Arbitration Section will become effective on February 1, 2000. This Arbitration Section reads:

> Arbitration: Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration.

> The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the claim is filed. . . . Any arbitration hearing at which you appear will take place within the federal judicial district that includes your billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). Judgment upon any arbitration award may be entered in any court having jurisdiction. . . .

> THE RESULT OF THIS ARBITRATION SECTION IS THAT, EXCEPT AS PROVIDED ABOVE, CLAIMS CANNOT BE LITIGATED IN COURT, INCLUDING SOME CLAIMS THAT COULD HAVE BEEN TRIED BEFORE A JURY, AS CLASS ACTIONS OR AS PRIVATE ATTORNEY GENERAL ACTIONS.

*If you do not wish your account to be subject to this Arbitration Section, you must write to us at MBNA America, P.O. Box 15565, Wilmington, DE 19850. Clearly print or type your name and credit card account number and state that you reject this Arbitration Section. You must give notice in writing; it is not sufficient to telephone us. Send this notice only to the address in this paragraph: do not send it with a payment. We must receive your letter at the above address by January 25, 2000 or your rejection of the Arbitration Section will not be effective.*

After a dispute over payment arose, MBNA submitted a claim to arbitration, and on August 31, 2005, the arbitrator rendered an award in favor of MBNA in the amount of $6,198.13. On December 13, 2005, MBNA filed a petition with the circuit court seeking to confirm the award. MBNA noted that under the FAA, the time period for Danner to challenge the arbitration award had passed. Danner responded, alleging that she had never entered into an arbitration agreement with MBNA, that she did not participate in the arbitration, and that she had never waived her due-process rights with respect to any disputes related to any business or other relationship that may have existed between the parties. MBNA then filed a motion for summary judgment, stating that based on the petition and Danner's response, the circuit court should conclude that the arbitration award was proper. The circuit court granted MBNA's motion and confirmed the award.

On appeal, Danner argues that the circuit court erred in confirming the arbitration award because no valid arbitration agreement existed. MBNA contends that the circuit court did not err in granting summary judgment and confirming the arbitration award because Danner did not timely challenge the award. The standard of review when summary judgment has been granted is well settled:

> "Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law." *Wallace v. Broyles,* 331 Ark. 58, 66, 332 Ark. 189, 961 S.W.2d 712 (1998) (*Wallace I*) (citing *Pugh v. Griggs,* 327 Ark. 577, [940 S.W.2d 445 (1997)]). The standard is whether the evidence is sufficient to raise a fact issue, not whether the evidence is sufficient to compel a conclusion. *Id.* (citing *Caplener v. Bluebonnet Milling Co.,* 322 Ark. 751, 911 S.W.2d 586 (1995)). A fact issue exists, even if the facts are not in dispute, if the facts "may result in differing conclusions as to whether the moving party is entitled to judgment as a matter of

law. . . . [I]n such an instance, summary judgment is inappropriate." *Wallace v. Broyles,* 332 Ark. 189, 961 S.W.2d 712 (1998) (supplemental opinion denying rehearing) (*Wallace II* ).

On review, this court determines if summary judgment was appropriate based on whether the evidence presented in support of summary judgment leaves a material question of fact unanswered. *Wallace I, supra.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Wallace I, supra.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.* (citing *Angle v. Alexander,* 328 Ark. 714, 945 S.W.2d 933 (1997)).

*Ultracuts Ltd. v. Wal-Mart Stores, Inc.,* 343 Ark. 224, 231, 33 S.W.3d 128, 133 (2000).

It should first be noted that the Federal Arbitration Act (FAA), not the Arkansas Uniform Arbitration Act, applies in the instant case because the transaction involves interstate commerce. *See Walton v. Lewis,* 337 Ark. 45, 49, 987 S.W.2d 262, 265 (1999). The relevant provisions of the FAA are as follows:

§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2000).

§ 12. Notice of motions to vacate or modify; service; stay of proceedings

*Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.* If the adverse party is a resident of the district within which the award was made, such service shall be made upon the

adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

9 U.S.C. § 12 (2000) (emphasis added).

In this case, the arbitrator's award was issued on August 31, 2005. The certificate of service on the face of the award indicates that the award was mailed to the parties the same day. Danner did not challenge the award until MBNA sought confirmation, which as Danner admits, was 104 days following issuance of the award. Pursuant to 9 U.S.C. § 12, Danner had three months after the award was filed or delivered to challenge the award. MBNA states that even allowing a week for delivery by the postal service, the time limit for bringing a challenge had already expired on January 10, 2006, the day Danner filed her response to MBNA's petition to confirm the award. Thus, MBNA maintains that Danner is time-barred from bringing a challenge. For her part, Danner contends that she was not required to file a petition to set aside the arbitration award within three months of the filing or delivery of the award because she disputes entering into an arbitration agreement, she did not participate in the arbitration, and MBNA failed to provide proof that she had actually received notice of the award. In support of this proposition, Danner cites *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir. 1998). In that case, MCI brought an action to enforce an arbitration award against Exalon, a former customer. *Id.* at 428. An arbitrator was appointed and a hearing was scheduled for July 10, 1995. *Id.* Exalon failed to respond to the notice, and on August 29, 1995, the arbitrator rendered an award in favor of MCI in the amount of $83,233.24. *Id.* Exalon contended that no written agreement existed between the parties binding them to arbitrate the controversy. *Id.* Exalon thus claimed the arbitration award was invalid and unenforceable. *Id.*

The arbitration provisions were included in a tariff regulation filed by MCI with the Federal Communications Commission. *Id.* at 427-28. MCI contended that Exalon was bound by the

mandatory arbitration provisions of the tariff, which was in writing and of which, it was argued, Exalon was presumed by law to have knowledge. *Id.* at 428. MCI argued that, because Exalon failed to participate in the arbitration proceedings, Exalon was bound by the award entered against it. *Id.* Citing title 9, section 12, of the FAA, MCI also argued that, in any case, Exalon's failure to challenge the award within three months after it was filed or rendered barred it from contesting its validity before the district court. *Id.* The United States Court of Appeals for the First Circuit disagreed, holding that "the time limits provided by section 12 for the vacation, modification, or correction of an award do not prevent a party who did not participate in an arbitration proceeding from challenging the validity of the award at the time of its enforcement on the basis that no written agreement to arbitrate existed between the parties." *MCI,* 138 F.3d at 431 (footnote omitted). The court explained:

> We find no indication that Congress intended for a party to be found to have waived the argument that there was no written agreement to arbitrate if that party failed to raise the argument within the time period established by section 12. To the contrary, a different conclusion would be inconsistent with the most natural reading of section 4 of the FAA. Section 4 of the FAA provides, in pertinent part:
>
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any . . . district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.
>
> 9 U.S.C. § 4. Upon receipt of such a petition, the district court determines whether there was an agreement to arbitrate. If the existence of the agreement is not in issue, the court must proceed forthwith to "make an order directing the parties to proceed to arbitration." In contrast, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." MCI's position is that a party "aggrieved by the failure . . . of another to arbitrate" may initiate arbitration on its own and prevail by default, rather than first seeking an order under section 4. But the focus of section 4 is on the party seeking arbitration, who must affirmatively petition for a court order enforcing the agreement. It is unlikely that Congress intended to allow the provisions of section 4 to be bypassed so easily.

We thus conclude that, as a general matter, section 12, as well as section 2 and the other enforcement provisions of the FAA, do not come into play unless there is a written agreement to arbitrate. Thus, if there is no such agreement, the actions of the arbitrator have no legal validity. It follows that one is not required to mount a collateral challenge to such an ineffectual action, for if the agreement to arbitrate does not exist, there is no obligation to arbitrate — and a noncontracting person's failure to appear at the arbitration hearing does not create such an obligation.

A party that contends that it is not bound by an agreement to arbitrate can therefore simply abstain from participation in the proceedings, and raise the inexistence of a written contractual agreement to arbitrate as a defense to a proceeding seeking confirmation of the arbitration award, without the limitations contained in section 12, which are only applicable to those bound by a written agreement to arbitrate. Of course, if a court later determines that an arbitration agreement was in effect, and that the non-appearing party was bound by its conditions, the FAA would then fully come into operation, including the time limitations of section 12.

*Id.* at 430.

While decisions of the federal circuit courts are not binding on this court, we find the First Circuit's interpretation of the FAA to be highly persuasive. We agree with the *MCI* court's conclusion that the time limit imposed by 9 U.S.C. § 12 is not triggered unless there is a written agreement to arbitrate. In this case, there is a fact issue as to whether such an agreement existed between Danner and MBNA. Accordingly, we hold that the circuit court erred in granting summary judgment in favor of MBNA. We reverse and remand this case to the circuit court to determine whether a written agreement to arbitrate existed between Danner and MBNA.

Reversed and remanded.