Debra TALBERT  *v.*  U.S. BANK, N.A.

07–497                                                    271 S.W.3d 486

Supreme Court of Arkansas
Opinion delivered January 17, 2008

*Brad J. Williams*, for appellant.

*Rose Law Firm, a Professional Association*, by: *Joi Leonard* and *Herbert C. Rule, III*, for appellee.

Aɴɴᴀʙᴇʟʟᴇ Cʟɪɴᴛᴏɴ Iᴍʙᴇʀ, Justice. The instant appeal arises from a complaint filed by Appellee U.S. Bank, N.A., seeking payment by Appellant Debra Talbert of an overdraft balance. The balance originated when a check in the amount of $84,457.57, deposited by Talbert with a U.S. Bank branch, was dishonored by the drawee bank because the payee line was alleged to have been altered. The Pulaski County Circuit Court granted summary judgment in favor of U.S. Bank, concluding that Talbert breached the transfer warranties under Ark. Code Ann. § 4-4-207 (Repl. 2001 & Supp. 2007), and dismissed Talbert's counterclaim for constructive fraud. Talbert now appeals, alleging that five points of error require reversal of the circuit court's order: 1) Talbert possesses a defense to the claims of U.S. Bank under Ark. Code Ann. § 4-4-406 (Repl. 2001); 2) Talbert possesses a defense to the claims of U.S. Bank under Ark. Code Ann. § 4-3-406 (Repl. 2001); 3) as a matter of law and equity, the conduct and representations of U.S. Bank precluded it from being able to assert a claim against Talbert; 4) U.S. Bank was precluded from asserting a claim against Talbert for the amount in her account at the time that U.S. Bank learned of the drawee bank's claim of an altered payee; 5) Talbert presented evidence sufficient to support her counterclaim for constructive fraud. As this appeal presents issues of statutory interpretation and substantial public interest, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(4) & (6) (2007). We find no error and affirm.

During the summer of 2005, Talbert developed a relationship with a man known to her as David Smith, who told her that

he was from South Carolina but was currently working in Nigeria. Over the course of several months, Smith borrowed approximately $25,000 from Talbert. He told Talbert that he wanted to repay her by sending her a check. In mid-November of 2005, Talbert received a check in the amount of $84,457.57. The check was drawn by Pelican Management, Inc., of New Rochelle, New York, and was drawn on the Bank of New York. The payee line read, "Accounts Receivable: Debra Talbert." On November 29, 2005, Talbert deposited this check with a U.S. Bank branch in Maumelle. When Talbert expressed concern about the validity of the check, she was informed of a special-collections procedure that could be employed for her protection; Talbert opted to use this service and paid seventy-five dollars for it. A "collection receipt form" was executed by U.S. Bank on December 6, and the check was sent for collection to the Bank of New York. On January 6, 2006, the Bank of New York issued an official check to U.S. Bank for the payment of the check, which was then credited to Talbert's account. On January 12, Talbert attempted to wire $74,000 to an account with Hong Seng Bank in Hong Kong, but U.S. Bank refused. Talbert then began making large cash withdrawals and purchasing official checks. Talbert stated that she was sending the money to David Smith and his friends as requested and that she also loaned approximately $35,000 to another individual.

On January 23, 2006, the Chief Financial Officer of Pelican Management, Inc., executed an "Affidavit of Forgery/Alteration" with the Bank of New York, alleging that the payee line on the check had been changed from "Amerada Hess Corporation" to "Debra Talbert." The following day, the Bank of New York informed U.S. Bank that it was returning the check because of the altered payee and requested that U.S. Bank place a hold on the affected funds. U.S. Bank placed a hold on the approximately $15,000 remaining in Talbert's account at the time. Talbert was informed of the return of the check and the hold on her account on January 26. The hold expired on February 28. On March 2, Talbert withdrew most of the money and closed the account.

On April 13, 2006, Talbert was informed by letter that U.S. Bank had debited her account for the full amount of the check. U.S. Bank remitted the funds to the Bank of New York, leaving an overdraft balance of $84,010.53 in Talbert's account. By that time, all of the money that Talbert had withdrawn from the account had been disbursed to other persons. A letter from U.S. Bank dated May 1 requested payment of the overdraft balance and threatened

Talbert with criminal prosecution for failure to pay. To date, Talbert has not repaid any portion of the overdraft balance. U.S. Bank filed its complaint on July 14, 2006, requesting judgment in the amount of $84,010.53 plus any additional overdraft charges, attorney's fees, and costs. Talbert filed a counterclaim, alleging that U.S. Bank had committed fraud by repeatedly assuring Talbert that the special-collections procedure, for which she paid seventy-five dollars, would safeguard her, knowing that it would not protect her from the situation that actually ensued. A hearing on the counterclaim and U.S. Bank's motion for summary judgment was held on January 8, 2007. On March 7, the circuit court granted the summary-judgment motion and dismissed Talbert's counterclaim, finding that Talbert had made and breached transfer warranties, that liability for such a breach is strict, and that Talbert was liable to U.S. Bank for the amount of the check plus expenses and loss of interest incurred as a result of the breach. Talbert filed a timely notice of appeal.

## Abstract

As a preliminary matter, we note U.S. Bank's contention that Talbert provided a flagrantly deficient abstract in her rebrief, contrary to this court's prior *per curiam* order and our court rules. On November 1, 2007, after the parties' briefs had been submitted to this court, we ordered rebriefing due to Talbert's failure to abstract a material portion of the transcript of the summary-judgment hearing. *Talbert v. U.S. Bank*, 371 Ark. 429, 266 S.W.3d 741 (2007) (per curiam). Talbert's revised abstract includes virtually all portions of the hearing, with little condensed, and is largely a verbatim copy of the transcript. Our rule on abstracting provides that the abstract "should consist of an impartial condensation, without comment or emphasis, of only such material parts of the testimony of the witnesses and colloquies between the court and counsel and other parties as are necessary to an understanding of all questions presented to the Court for decision." Ark. Sup. Ct. R. 4-2(a)(5) (2007). The rule further states, "If the Court finds the abstract or Addendum to be deficient such that the Court cannot reach the merits of the case, or such as to cause an unreasonable or unjust delay in the disposition of the appeal, the Court will notify the appellant that he or she will be afforded an opportunity to cure any deficiencies[.]" Ark. Sup. Ct. R. 4-2(b)(3). If the appellant fails to file a complying abstract, "the judgment or decree may be affirmed for noncompliance with the Rule." *Id*. U.S. Bank urges

this court to affirm the circuit court's order due to Talbert's failure to provide a properly condensed abstract after being given the opportunity to cure deficiencies.

We have stated that "excessive abstracting is as violative of our rules as omissions of material pleadings, exhibits, and testimony." *Forrest City Machine Works, Inc. v. Mosbacher*, 312 Ark. 578, 587, 851 S.W.2d 443, 448 (1993). However, Talbert's abstract is a mere fifteen pages long and has not prevented us from reaching the merits of the case or caused a delay in the disposition of the appeal. Moreover, a removal of all irrelevant or immaterial portions would not result in a substantial change in the length of the abstract, because nearly all portions are material and necessary to our understanding of the issues. Finally, in its use of the word "may," Ark. Sup. Ct. R. 4-2(b)(3) clearly indicates that this court has discretion in deciding whether a circuit court's order should be affirmed for noncompliance with the rule. We do not find this to be a situation that warrants the remedy of automatic affirmance. Thus, we choose to reach the merits of the case.

*Standard of Review*

The standard of review when summary judgment has been granted is well settled. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the party is entitled to judgment as a matter of law. *Danner v. MBNA America Bank, N.A.*, 369 Ark. 435, 255 S.W.3d 863 (2007). The standard is whether the evidence is sufficient to raise a fact issue, not whether the evidence is sufficient to compel a conclusion. *Id.* A fact issue exists, even if the facts are not in dispute, if the facts may result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law. *Id.* In such an instance, summary judgment is inappropriate. *Id.*

On review, this court determines if summary judgment was appropriate based on whether the evidence presented in support of summary judgment leaves a material question of fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

### I. Ark. Code Ann. § 4-4-406

Pursuant to Ark. Code Ann. § 4-4-207 (Repl. 2001 & Supp. 2007), "[a] customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that . . . (3) the item has not been altered[.]" Ark. Code Ann. § 4-4-207(a). Further, "[i]f an item is dishonored, a customer or collecting bank transferring the item and receiving settlement and other consideration is obliged to pay the amount due on the item[.]" Ark. Code Ann. § 4-4-207(b). Because Talbert deposited the check at issue and received payment for it, she, as a matter of law, warranted to U.S. Bank that the check had not been altered. Because the check was dishonored due to the alteration, Talbert is obliged to pay the amount due on the item. U.S. Bank may recover from Talbert "as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the item plus expenses and loss of interest incurred as a result of the breach." Ark. Code Ann. § 4-4-207(c).

Talbert, however, claims to have a defense under Ark. Code Ann. § 4-4-406 (Repl. 2001), commonly known as the "bank-statement rule." Section 4-4-406 reads as follows, in pertinent part:

> If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

Ark. Code Ann. § 4-4-406(c). If the customer fails to comply with this duty to promptly notify the bank, "the customer is precluded from asserting against the bank" the customer's unauthorized signature or any alteration on the item. Ark. Code Ann. § 4-4-406(d). In other words, the bank-statement rule operates as a preclusion against the bank's customer; if he or she fails to review the statement of account and promptly notify the bank of any perceived alterations or unauthorized signatures, then he or she loses the benefit of being able to assert the alteration or unauthorized signature against the bank.

According to Talbert, this rule provides her with a defense. As a threshold matter, we must first determine whether this rule applies to Talbert's situation. When reviewing issues of statutory interpretation, the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Maddox v. City of Fort Smith*, 369 Ark. 143, 251 S.W.3d 281 (2007). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, however, it is given its plain meaning, and we will not reach for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.* We are very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

We find the bank-statement rule to be clear and unambiguous. It is obvious from the plain wording of the statute that it applies only to a customer who fails to comply with the duty to promptly notify the bank of any perceived alterations or unauthorized signatures, and it operates to preclude that customer from asserting the alteration or unauthorized signature against the bank. Talbert misconstrues the statute by arguing that the alleged failure of Pelican Management to promptly notify its bank, the Bank of New York, of the alteration somehow provides a defense to her as against U.S. Bank. Section 4-4-406 is relevant only to the relationship between Pelican Management and the Bank of New York; it has no effect on the relationship between Talbert and U.S. Bank. Furthermore, even if section 4-4-406 did have some effect on Talbert's relationship with her bank, Pelican Management completed the Affidavit of Forgery/Alteration with the Bank of New York on January 23, 2006, only twelve days after the amount of the check was credited to Talbert's account. The bank-statement rule is clearly inapposite in this case.

## II. Ark. Code Ann. § 4-3-406

For her second point on appeal, Talbert claims a defense under Ark. Code Ann. § 4-3-406 (Repl. 2001), commonly known as the "negligence rule." Section 4-3-406 provides that "[a]

person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection." Ark. Code Ann. § 4-3-406(a). It is unclear whether Talbert seeks to assert the preclusion against U.S. Bank or against Pelican Management, but the defense fails in either situation.

▪ Talbert has not, at any stage of this case, presented evidence to show that any alleged failure to exercise ordinary care on the part of either U.S. Bank or Pelican Management substantially contributed to the alteration. By Talbert's own counsel's admission, almost nothing by way of discovery had been accomplished at the time of the hearing. A mere suggestion that Talbert might be able to form a defense based on facts unknown to her at this point is not sufficient to overcome summary judgment. This court has repeatedly stated that if the party moving for summary judgment makes a *prima facie* showing that no issues of fact exist, and the non-moving party fails to show that such issues do exist, then we must affirm the circuit court's grant of a summary judgment. *Golden Tee, Inc. v. Venture Golf Schools, Inc.*, 333 Ark. 253, 969 S.W.2d 625 (1998). Upon the moving party's showing of an entitlement to summary judgment, the non-moving party must meet proof with proof and demonstrate the existence of a material issue of fact. *Mitchell v. Lincoln*, 366 Ark. 592, 237 S.W.3d 455 (2006). Talbert has failed to meet proof with proof, as the record reveals no evidence supporting an allegation that negligence on the part of U.S. Bank or Pelican Management substantially contributed to the alteration.

### III. Agreement

Talbert next contends that she and U.S. Bank agreed to impose the risk of loss on the bank. She relies on Ark. Code Ann. § 4-4-103 (Repl. 2001), which provides as follows, in relevant part:

> The effect of the provisions of this chapter may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure.

However, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.

Ark. Code Ann. § 4-4-103(a). Talbert asserts that, pursuant to this section, she and U.S. Bank entered into an agreement to waive any obligations on the part of Talbert and to impose the risk of loss on the bank. She argues that, by virtue of their agreement, the bank took on an affirmative duty to assert any available defenses under law or equity upon the return of the check from the drawee bank. As evidence of the existence of this agreement, Talbert points to her repeated concern about the validity of the check and the bank's offer of a special-collections procedure that was intended to safeguard her. Talbert reiterates that she paid seventy-five dollars for the service. She also notes that U.S. Bank never explained the purpose of the special-collections procedure and suggests that she was led to believe that it would guarantee that the check would be "unconditionally verified." Talbert contends that U.S. Bank failed to comply with the terms of the agreement by refusing to pursue any possible defenses against Pelican Management and the Bank of New York.

■ The primary problem with Talbert's argument on this point is that Ark. Code Ann. § 4-4-207 clearly states that the transfer warranties "cannot be disclaimed with respect to checks." Ark. Code Ann. § 4-4-207(d) (Repl. 2001 & Supp. 2007). Talbert insists that she did not disclaim the transfer warranties but that the agreement between her and U.S. Bank simply waived her obligations. We find this argument unconvincing. An agreement to waive all obligations would also be a disclaimer of those obligations. Although Talbert does not characterize the agreement as disclaiming the transfer warranties, such an agreement would have done just that. Because a disclaimer of transfer warranties is expressly prohibited with respect to checks by Ark. Code Ann. § 4-4-207(d), the alleged agreement would not have been valid, even if Talbert had successfully proven its existence.

*IV. Good Faith and Ordinary Care*

Talbert next contends that U.S. Bank breached its duty to act in good faith and with ordinary care by failing to protect the approximately $15,000 that remained in Talbert's account at the time the bank was notified about the allegation of an alteration. Talbert enumerates three ways in which U.S. Bank breached its

duty. First, it failed to place a permanent hold on her account, instead choosing to let the temporary hold expire, after which Talbert withdrew most of the money. Second, it should have debited her account for the amount of the check immediately, rather than waiting until the account was nearly empty. Third, it "unconditionally reassured" her after the temporary hold expired that the remaining money was available for withdrawal, knowing that the check was being returned. According to Talbert, if not for these three failures, the approximately $15,000 would have remained in the account and lessened the overdraft balance now due. She insists that U.S. Bank is now precluded from an attempt to recover that amount.

Talbert provides no legal authority for the contention that the bank failed to act in good faith and with ordinary care. In fact, she provides no legal authority for the contention that the bank had a duty to place a permanent hold on her account and debit her account immediately. Moreover, she fails to provide legal authority for the argument that a breach of that duty results in a preclusion from asserting a claim. Because of Talbert's complete failure to support her assertions with legal citations, we find this point to be without merit. In addition, her insistence that the bank should have protected her from withdrawing money from the account is somewhat disingenuous. Talbert was previously informed that the check was being returned due to an alteration; yet, she chose to withdraw and spend most of the remaining funds. The bank was not responsible for preventing this behavior.

*V. Counterclaim*

Finally, Talbert argues that she provided sufficient evidence to support her counterclaim of constructive fraud. This court has continuously held that the charge of fraud must be sustained by clear, strong, and satisfactory proof. *Knight v. Day*, 343 Ark. 402, 36 S.W.3d 300 (2001). In the instant case, Talbert has failed to meet this standard. She asserts that the repeated assurances made to her by U.S. Bank that the money could be withdrawn without a problem, as well as the offer of the special-collections procedure, constituted actionable misrepresentations. However, she has failed to submit proof supporting her constructive-fraud claim. As previously noted, Talbert's counsel stated at the summary-judgment hearing that essentially no discovery had been completed.

Additionally, Talbert's argument on this point strikes us as a reframing of her contention that the special-collections procedure represented an agreement to impose the risk of loss on the bank. Talbert presents this final point as a counterclaim, but it is, in reality, a defense she has already articulated. Once again, we note that an alleged agreement to waive Talbert's obligations is essentially identical to a disclaimer, prohibited by Ark. Code Ann. § 4-4-207(d).

Affirmed.