The Honorable Gene Shelby State Representative
137 Circle Drive Hot Springs, Arkansas 71901-2773
Dear Representative Shelby:
I am writing in response to your request for reconsideration of the conclusion reached in Op. Att'y Gen. 2009-092 (copy attached).
In that opinion, I concluded that Garland County, currently having in effect a one-half percent (0.5%) sales and use tax levied pursuant to A.C.A. §§ 26-74-401 to-414 (Repl. 2008 and Supp. 2009) ("subchapter 4"), may not simultaneously levy an additional sales and use tax under A.C.A. § 14-164-340 (Repl. 1998). I will restate here in a summary manner the reasoning of Op. Att'y Gen. 2009-092.
For so long as Garland County levies a tax under subchapter 4, it is subject to the limitations thereof, one of which is that the proceeds of any additional county sales and use tax be shared with the municipalities within the county on a per capita basis. The relevant statute provides:
 If any county levying a one-half percent (0.5%) tax under the authority of [subchapter 4] subsequently levies any additional sales and use taxes under authority of any other law, the net revenues derived from any such additional levy or levies shall be
allocated and distributed to the county and the municipalities in the county on a per capita basis in the manner provided in § 26-74-313.
A.C.A. § 26-74-414(b) (Repl. 2008) (emphases added). *Page 2 
You asked whether Garland County may levy, in addition to its subchapter 4 tax, a tax under A.C.A. § 14-164-340, a provision authorizing pay-as-you-go sales and use tax financing of criminal justice capital projects, to build a jail. That statute provides that revenues from a tax levied thereunder must "be expended solely for the projects authorized by the electorate." A.C.A. § 14-164-340(a)(2).
My answer in Op. Att'y Gen. 2009-092 was in the negative because, in my opinion, the revenues arising from a tax imposed under A.C.A. § 14-164-340 must be expended only for the criminal justice projects specified on the ballot and approved in the election held in connection with the imposition of the tax.[1]
Garland County cannot share the proceeds of any additional sales and use tax with the municipalities within the county, as required by A.C.A. § 26-74-414(b), and at the same time use the proceeds of the additional tax solely for construction of a county jail, as required by A.C.A. § 14-164-340. As a result, because Garland County already levies a tax under subchapter 4 and therefore is subject to the limitations thereof, the county may not impose a tax under A.C.A. § 14-164-340.
I will address your arguments that are responsive to the conclusion reached in Op. Att'y Gen. 2009-092.
Initially, you argue that the conclusion reached in Op. Att'y Gen. 2009-092 gives municipalities a veto over county plans to finance capital projects with sales and use taxes, and that counties will face prohibitive costs, due to windfalls to municipalities, for sales and use tax-financed capital projects. This contention, however, is misplaced inasmuch as I did not state, in Op. Att'y Gen. 2009-092, that Garland County may impose a tax under A.C.A. § 14-164-340 provided it shares the proceeds thereof with the municipalities within the county. Rather, my conclusion was that Garland County may not impose a tax under A.C.A. § 14-164-340 at all, so long as it has a subchapter 4 tax in effect. *Page 3 
Additionally, your request for reconsideration implies that the conclusion of my opinion has application to a broad range of situations that were not, in fact, considered. To the contrary, the conclusion reached in Op. Att'y Gen. 2009-092 was based only upon the restrictive language of A.C.A. § 14-164-340, [2] as it relates to the limitation set forth in A.C.A. § 26-74-414(b). Because your original opinion request addressed only the prospect of a tax imposed under A.C.A. § 14-164-340, a "pay-as-you-go" provision, my opinion did not address Garland County's ability to impose a tax under any other law, including without limitation any law providing for a tax to secure tax revenue bonds.
In your request for reconsideration, you note that A.C.A. § 26-74-414(b) requires the "net revenues" of the additional tax to be distributed on a per capita basis "in the manner provided in § 26-74-313." The term "net revenues" is not defined in either A.C.A. § 26-74-414 or A.C.A. § 26-74-313. You submit, and I agree, that the meaning of the term may be found by examining A.C.A. § 26-74-313, which provides in relevant part:
 (b) Except as set forth in subsections (c), (e), and (f)[3] of this section, any tax collected . . . on behalf of any county shall be deposited with the Treasurer of State in trust and shall be kept in a separate suspense account.
 (c) Any moneys . . . which are pledged to secure the payment of lease rentals or bonds authorized by this subchapter . . . shall be . . . transmitted to the county subject to the charges payable to the State of Arkansas set forth in subsection (d) of this section. . . .
 (d)(1) The Treasurer of State shall transmit to the treasurer or financial officer of each city and county its per capita share, after deducting the amount required for claims, overpayments, and bad checks. . . .
 (2). . . .
 (3) Transmittals shall be made at least quarterly. . . . Funds so transmitted may be used by the cities and counties for any purpose *Page 4 
for which the city's general funds or county's general funds may be used. Before transmitting these funds, the Treasurer of State shall deduct three percent (3%) of the sum collected as a charge by the state for its services. . . .
 (4) The director is authorized to retain in the suspense account a balance not to exceed five percent (5%) of the amounts remitted. . . . to make refunds . . . of any overpayments made and to redeem dishonored checks and drafts. . . .
I understand your argument to be that the phrase "net revenues" should be interpreted to refer not to the gross proceeds of the additional tax, but rather to the amounts, if any, arising from the additional tax and remaining after the deduction, under A.C.A. § 26-74-313(c), of amounts pledged to secure payments on leases or bonds. While the suggested interpretation might, or might not, be correct or appropriate were Garland County to impose a sales and use tax to secure the payment of leases or bonds, it has no applicability, in my opinion, to the tax authorized by A.C.A. § 14-164-340, a "pay-as-you-go" tax. In applying A.C.A. § 26-74-313 to amounts collected under a tax authorized by A.C.A. § 14-164-340, the responsible authorities will not make any deduction under A.C.A. § 26-74-313(c), because none of the money collected will have been "pledged to secure the payment of lease rentals or bonds," there having been no issuance of debt in connection with the imposition of the tax.
Alternatively, your argument may be that A.C.A. § 26-74-414(b) is simply inapplicable, and that aper capita distribution is not required, unless the tax enacted subsequently to the subchapter 4 tax is one that is pledged to the payment of county debt. Such an argument might be to the effect that, absent a deduction (of debt-pledged proceeds), net
revenues do not arise, and the gross revenues that do arise are therefore not subject to the rule of A.C.A. § 26-74-414(b). Any such argument ignores the plain language of both A.C.A. § 26-74-414(b) and A.C.A. § 26-74-313(d)(3) and (4). The former requires percapita distribution of the net revenues derived underany tax levied under any law. The latter provide for deductions from gross tax revenues and for per capita
distribution of the resulting amounts, which are obviously net of the specified deductions and therefore plainly are "net revenues" within the ordinary meaning of that phrase.
In my opinion, "net revenues" as used in A.C.A. § 26-74-414(b) means, with respect to proceeds of a tax under A.C.A. § 14-164-340, the gross proceeds of the *Page 5 
tax less the State Treasurer's three percent (3%) fee for services described in A.C.A. § 26-74-313(d)(3) and the amount, if any, held pursuant to A.C.A. § 26-74-313(d)(1) and (4) to cover claims, overpayments and bad checks.
You argue that my conclusion in Op. Att'y Gen. 2009-092 violates several rules of statutory construction, including rules that statutes should be construed to be consistent, harmonious and sensible; that absurd results should be avoided; that apparent conflicts among statutes should be reconciled; that all relevant statutes should be given effect if possible; and that legislative intent should not be inferred in the absence of clear expression.
I believe my conclusion in Op. Att'y Gen. 2009-092 is fully consistent with the applicable rules of statutory construction. With respect to a single statute, the fundamental rule of statutory construction is to give effect to the intent of the legislature.See, e.g., Citifinancial Mortgage Co., Inc. v. Matthews,372 Ark. 167, 271 S.W.3d 501 (2008). In the absence of ambiguity, [4] legislative intent is determined from the ordinary and usually accepted meanings of the language used. See id. If a statute is clear and unambiguous, it is given its plain meaning, without further search for legislative intent. See, e.g., City ofFt. Smith v. Carter, 372 Ark. 93, 270 S.W.3d 822 (2008). In such a case, there is "no need to resort to rules of statutory construction." Jones v. Double "D" Properties, Inc.,352 Ark. 39, 46, 98 S.W.3d 405 (2003). Courts are very hesitant to interpret a statute in a manner contrary to its express language unless it is clear that a drafting error or omission has frustrated legislative intent. See, e.g., Talbert, supra note 4. A court may interpret a statute other than according to its plain language, however, to avoid an absurd result that defies common sense.See, e.g., Citifinancial Mortgage, 372 Ark. at 173.
In my view, the language of each of the statutes at issue is clear and unambiguous. Subchapter 4 requires per capita distribution if Garland County "subsequently levies any additional sales and use taxes under authority of any other law. . . ." A.C.A. § 26-74-414(b) (emphases added). That language is clear and all-encompassing, admitting of no exception. The per capita
distribution is to be of the "net revenues" from the subsequent tax and "in the manner provided in [A.C.A.] § 26-74-313."Id. At least with respect to a "pay-as-you-go" tax like that *Page 6 
authorized by A.C.A. § 14-164-340, the phrase "net revenues" can only mean the gross tax proceeds less the deductions specified in A.C.A. § 26-74-313(d), which statute clearly provides a manner ofper capita distribution.
The other statute at issue here is also clear and unambiguous. It provides that the proceeds of the tax authorized thereunder must be "expended solely for the projects [of capital improvements for criminal justice purposes] authorized by the electorate." A.C.A. § 14-164-340(a)(2) (emphasis added).
I see no reason to suspect that a drafting error or omission has frustrated legislative intent with respect to either of the statutes at issue. Neither does an absurd result arise from application of either statute, standing alone.
When more than one statute relating to the same subject must be considered, they should be read together and in a harmonious manner, resolving apparent conflicts if possible and giving each its intended effect. See, e.g., Weiss v. Maples,369 Ark. 282, 253 S.W.3d 907 (2007).
In this case, it is entirely reasonable to conclude from an examination of the applicable statutes that the General Assembly intended to permit a county to impose only one sales and use tax that is neither pledged to the payment of debt nor shared with the municipalities within the county that have their own sales and use taxes. The legislative intent is carried fully into effect by the operation of A.C.A. § 26-74-414(b). The fact that a given county cannot enact every tax that is available to any county is no reason to interpret the applicable statute in a way that ignores its plain language.
Garland County is hardly unique in having certain courses of action relating to local sales and use taxes foreclosed by choices made earlier. In Daniel v. Jones,332 Ark. 489, 966 S.W.2d 226 (1998), application of White County's sales and use tax was held to be an illegal exaction where the proceeds were shared with the municipalities but no mention of sharing was made on the ballot for adoption of the tax. InMaas v. City of Mountain Home,338 Ark. 202, 992 S.W.2d 105 (1999), application of the city's sales and use tax was held to be an illegal exaction where the proceeds were expended for purposes other than those specified in connection with the tax election. In Op. Att'y Gen. 2008-152, I discussed a city's proposed use of sales and use tax revenues to pay debt service on obligations issued under Ark. Const. amend. 78, and cautioned that revenues from a tax levied for other *Page 7 
specified purposes likely would not be available for debt service. In Op. Att'y Gen. 2002-229, a predecessor concluded that a city could share in the proceeds of a subchapter 4 county tax only by repealing its own municipal sales and use tax.
After reconsideration, I respectfully decline to alter the conclusion stated in Op. Att'y Gen. 2009-092.
Assistant Attorney General J. M. Barker prepared the foregoing opinion, which I hereby approve.
Sincerely, DUSTIN McDANIEL Attorney General
[1] See Op. Att'y Gen. 89-351, to the effect that proceeds of a tax levied under A.C.A. § 14-164-338 (Supp. 2009), a "pay-as-you-go" provision substantially similar in relevant part to A.C.A. § 14-164-340, must be remitted to the taxing entity only and used solely for the purpose approved by the electorate, pursuant to A.C.A. §§ 14-164-336(c) (Supp. 2009) and-338, rather than being distributed per capita. As noted in Op. Att'y Gen. 2009-092, A.C.A. § 14-164-338 was enacted in 1988, prior to the enactment of subchapter 4, including A.C.A. § 26-74-414, in 1991, which fact indicates that the legislature did not intend the enactment of A.C.A. § 26-74-414 to negate the use restriction of A.C.A. § 14-164-338. The legislature could have been informed of Op. Att'y Gen. 89-351, addressed to the State Treasurer, at the time A.C.A. § 26-74-414, containing no exception to its percapita distribution requirement, was enacted. The legislature, in later enacting A.C.A. § 14-164-340, likely intended it to be interpreted in the same way as the similar A.C.A. § 14-164-338.
[2] While Op. Att'y Gen. 2009-092 did not refer to A.C.A. § 14-164-336(c), the discussion of that statute contained in Op. Att'y Gen. 89-351 is equally applicable to A.C.A. §§ 14-164-338 and-340.
[3] Subsections (e) and (f) of A.C.A. § 26-74-313 provide for disposition of proceeds of a tax on aviation fuel, are not relevant to the issues discussed in this opinion, and are not further addressed herein.
[4] "A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning." Talbert v. U.S. Bank, N.A.,372 Ark. 148, 155, 271 S.W.3d 486 (2008).