CALDWELL v. MISSOURI STATE LIFE INSURANCE COMPANY.

Opinion delivered May 9, 1921.

1. CONTRACTS—QUASI AND IMPLIED CONTRACTS DISTINGUISHED.—An implied contract is one that is inferable from the conduct of the parties, as carrying out their intention; while a *quasi* or constructive contract is one where the law imposes an obligation enforceable in a contractual action because of the conduct of the parties, though contrary to their intention.

2. ATTORNEY AND CLIENT—IMPLIED CONTRACT.—Where the attorney of an insurance company resigned his employment upon discovering misappropriation of the company's funds by its president, and reported the facts to the directors, who refused to take action thereon, whereupon he reported the matter to the State Superintendent of Insurance and thereby caused the president's resignation, there was no implied contract by the company to pay for the attorney's services.

3. ATTORNEY AND CLIENT—CONSTRUCTIVE CONTRACT.—Where an insurance company refused to avail itself of the services of an attorney in exposing misappropriations by its president, whereupon the attorney reported the same to the Superintendent of Insurance, and procured the president's resignation, the law does not impose on the company any contractual obligation to pay the attorney for his services in the matter.

Appeal from Mississippi Chancery Court, Osceola District; *Archer Wheatley*, Chancellor; affirmed.

### STATEMENT OF FACTS.

The Missouri State Life Insurance Company brought this suit in equity against Clinton L. Caldwell to foreclose a mortgage on 320 acres of land in the Osceola District of Mississippi County, Arkansas, given to secure an indebtedness of $11,000 borrowed by the defendant from the plaintiff.

Clinton L. Caldwell filed an answer in which he admitted the allegations of the plaintiff's complaint, and by way of cross-complaint asked for judgment against the plaintiff in the sum of $60,000. He based his right to recover against the plaintiff on a state of facts substantially as follows:

The Missouri State Life Insurance Company is a corporation organized under the laws of the State of Missouri and does a life insurance business in that and several other States, including the State of Arkansas. The plaintiff is a stock company with about 11,000 stockholders. In 1918 it had 87,000 policy holders and outstanding insurance to the amount of $157,000,000. Its assests were about $17,000,000 and its capital, surplus and profits, about $3,000,000. John G. Hoyt was president of the company and in active charge of its business. He owned about one-fourth of the stock, and the remainder of the stock was owned by about 11,000 stockholders.

The defendant, Clinton L. Caldwell, was an attorney at law, duly licensed to practice in the States of Missouri and Arkansas. Caldwell specialized in the examination of land titles, and for about fifteen years prior to

January 7, 1918, there was numbered among his clients the plaintiff which employed him to examine and approve titles to real estate offered as security for loans made by it. His compensation for such services was paid exclusively by the borrower. Caldwell usually made $10,000 a year out of this business. A short time prior to January 7, 1918, Caldwell discovered that John G. Hoyt, president of the plaintiff company, was using the funds of his company for his own private gain, in violation of section 7065 of the Revised Statutes of Missouri for 1919. Caldwell resigned from the employment of the company on the 7th day of January 1918, and on January 14, 1918, he presented to the Missouri directors of the plaintiff company a specific statement in writing showing that John G. Hoyt had purchased two sections of cut-over land in Missouri for about $26,000 in the name of E. L. Harris and had loaned Harris $65,000 of the plaintiff's money ostensibly to pay the purchase price of said land, whereas $38,500 of said amount was not needed to pay the purchase price of said land, but was to be used in clearing and improving said land.

The directors caused the charge made by Caldwell to be presented at the annual meeting of the stockholders held in St. Louis on January 15, 1918. The stockholders declined to consider the charge and re-elected Hoyt as a director, and the board of directors re-elected him as president of the company. On January 16, 1918, Caldwell presented his charge to the superintendent of insurance for the State of Missouri, who found this and additional charges made by Caldwell to be true. Whereupon he demanded and received the resignation of Hoyt from the presidency of the board of directors of said company on February 28, 1919. The resignation was duly accepted by the board of directors on that day.

Among the charges brought by Caldwell against Hoyt, similar to the charge detailed above, was one where he frustrated the attempt of Hoyt to purchase 20,000 acres of cut-over land for the sum of $520,000 in the

name of other parties and to borrow from the plaintiff $800,000 with which to pay for and improve said land.

The plaintiff interposed a demurrer to the cross-complaint, which was sustained by the court, and the cross-complaint was dismissed for want of equity. The defendant, Caldwell, has appealed.

*Little, Buck & Lasley,* for appellant.

This case calls for the application of the law of *quasi-*contracts upon two theories, (1) receipt, acceptance and retention of benefits, and (2) the performance of an obligation by appellant which it was the legal and moral duty of appellee company to perform. Keener on the Law of *Quasi-*Contracts, pp. 19-20; Woodward on *Quasi-*Contracts, pp. 9-10; *Ib.,* pp. 190-4; Keener on *Quasi-*Contracts, pp. 341-2; *Ib.* 34617; Kennedy on Civil Salvage, p. 4 *et seq.* See, also, 83 Ark. 605; 23 Fed. Cases 13, 630; 30 *Id.* 18, 194. The cross-complaint states a cause of action, and this cause should be reversed.

*Jourdan, Bassieur & Pierce* and *Block & Kirsch,* for appellee.

1. The transactions out of which it is sought to have a contract implied or "constructed" all occurred in Missouri, and the laws of that State govern. All matters must be governed by *lex loci contractus.* 44 Ark. 213; 46 *Id.* 66; 73 *Id.* 518; 137 *Id.* 80.

The parties to a contract are conclusively presumed to have contracted with reference to the law existing at the time when and the place where the contract is made and to be performed. 40 Ark. 423; 25 *Id.* 625. If the person for whom services of a kind usually made the subject of charge are rendered knows of their rendition, he is liable therefor, though he made no express request, in the absence of special circumstances negativing his liability. 2 Page on Contracts, § 774.

If the services are accepted voluntarily, a previous request is not necessary to the creation of a liability. 2 Page on Contracts, § 775. This rule, however, applies

only where the party for whom the services are rendered is free to take their benefit or reject it. If the services are of such a nature that·he has no choice but to accept them, he can not be said to accept them voluntarily. Such acceptance creates no liability. 2 Page on Cont., § 776; 61 Mo. App. 64; 75 S. W. 966; 81 Am. Dec. 105; 33 Ohio St. 374; 95 Ark. 156; 42 N. E. 15. See, also, 6 R. C. L. 558; 61 Mo. App. 64; 95 Ark. 156.

The complaint must be looked to to determine what the allegations really are. The allegations of acceptance are directly in the teeth of the allegation that the board of directors and stockholders would have nothing to do with appellant. And they are mere conclusions of law and are not admitted by the demurrer. 163 Mo. 342; 63 S. W. 705; 142 U. S. 510; 110 Ark. 422. In the light of these authorities the cross-complaint does not state facts to constitute a cause of action ''on the theory of benefits received or services rendered.''

2. No cause of action on *quasi*-contract is made. Woodward on *Quasi*-Contracts, § 207; 34 Ch. Div. 234, 248.

Under the laws of Missouri appellee was under the supervising control of the State Insurance Supernitendent, who was empowered to inquire into all violations of insurance laws. Rev. Stat. of Mo. 1919, § 6095; *Ib.*, § 6129; Woodward, *Quasi*-Contracts, §§ 196, 321, pp. 314-15. The cross-complaint states no cause of action.

HART, J. (after stating the facts). The only issue raised by the appeal is whether ₁on the admitted facts the defendant, Caldwell, was entitled to recover of the defendant on an implied contract the value of the services for which he claims compensation. The defendant does not claim there was any express contract between him and the plaintiff, but he claims that he is entitled to recover from the plaintiff the reasonable value of his services on an implied contract.

In discussing the difference between contracts implied from the facts and contracts implied in law, *quasi*

or constructive contracts, in the case of *Hertzog* v. *Hertzog*, 29 Penn. St. Repts. 465, the court said: "But it appears in another place that Blackstone introduces this thought about reason and justice dictating contracts, in order to embrace, under his definition of an implied contract, another large class of relations, which involve no intention to contract at all, though they may be treated as if they did. Thus, whenever, not our variant notions of reason and justice, but the common sense and common justice of the country, and therefore the common law or statute law, impose upon any one a duty, irrespective of contract, and allow it to be enforced by a contract remedy, he calls this a case of implied contract. Thus out of torts grows the duty of compensation, and in many cases the tort may be waived, and the action brought in assumpsit. It is quite apparent, therefore, that radically different relations are classified under the same term, and this must often give rise to indistinctness of thought. And this was not at all necessary; for we have another well-authorized technical term exactly adapted to the office of making the true distinction. The latter class are merely constructive contracts, while the former are truly implied ones. In one case the contract is mere fiction, a form imposed in order to adapt the case to a given remedy; in the other it is a fact legitimately inferred. In one, the intention is disregarded; in the other, it is ascertained and enforced. In one, the duty defines the contract; in the other, the contract defines the duty."

It is manifest that no contract can be implied from the facts in this case. Caldwell had resigned his position under the plaintiff and did not during the time he performed the services in question act for the plaintiff. He presented his charges against the president of the company to the directors who resided in Missouri, and they in turn presented the same to the stockholders at their annual meeting. The stockholders declined to take notice of the charges, and re-elected Hoyt as a director,

and on the same day the board of directors re-elected him as president. This negatives the idea that the plaintiff accepted the services of Caldwell, or realized that they were deriving any benefit therefrom. Caldwell was not called upon by the corporation to perform the services in question. It not only did not accept his services, but did not even acquiesce in his performance of them. After being turned down by the stockholders, Caldwell presented his charges to the superintendent of insurance and thereby caused the superintendent to demand and receive Hoyt's resignation. The corporation had no voice in the matter and the action of Caldwell was purely voluntary. We can not perceive how the corporation could be said to have made an implied contract with him by accepting the benefits resulting from his services, which it had no power to reject. Hence no contract is raised by implication from the facts to pay Caldwell what his services are reasonably worth.

But counsel for the defendant claim that he is entitled to recover on a contract implied in law. There is nothing in the record from which this relation can be implied. There is no general equitable principle that one who receives the benefit of another's work against his will is liable to pay for it. There is a large class of cases where suits are brought to recover money paid by mistake, or where it has been obtained by fraud. In such cases the law implies a promise to repay the money. In the application of a like principle a recovery has also been allowed where necessaries had been furnished an insane person, or neglected wife, or child. So in the application of the principle this court allowed a recovery to a physician who performed an operation on an unconscious person in an effort to save his life. *Cotnam v. Wisdom,* 83 Ark. 601. The court said that the law implied a contract to pay a reasonable fee to the physician because the unconscious person was in the same situation as persons incapable of contracting by reason of being infants, or insane persons. The recovery is allowed in such cases on the ground that the services are

necessary to save or preserve the life of the principal. However, it can have no application in the case at bar.

There is another class of cases where the law prescribes the rights and liabilities of persons who have not entered into any contract with each other, but between whom circumstnces have arisen which make it just and equitable that one should have a right, and that the other should be subject to a liability similar to the rights and liabilities in certain cases of express contracts. Thus if one has obtained money from another through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass, such money may be recovered back; for the law implies a promise from the wrongdoer to restore it to the rightful owner, although it is obvious that this is the very opposite of his intention. *Dusenbury* v. *Speir*, 77 N. Y. 144. In that case the court likened constructive contracts of this nature to constructive trusts in a court of equity.

In 13 C. J. 224, the learned author said: "Among the instances of *quasi* or constructive contracts may be mentioned cases in which one person has received money which another person ought to have received, and which the latter is allowed to recover from the former in an action of assumpsit for money had and received, or money received to the use of plaintiff, cases in which one person has been compelled to pay money which another ought to have paid, and which he is allowed to recover from the latter in an action of assumpsit for money paid to his use; cases of account stated, from which the law implies a promise which will support an action of assumpsit; judgments on which an action of assumpsit or debt may be maintained, according to the circumstances, because of a promise to pay implied by law; cases in which an obligation to pay money is imposed by statute; cases where a person wrongfully appropriating property to his own use becomes liable to pay the owners the reasonable value thereof; cases in which a person fails to deliver specific property and becomes liable for the money value thereof; cases where one party wrongfully

compels another to render him valuable services, and a promise to pay their value is implied; cases where one man has obtained from another by oppression, extortion, or deceit, or by the commission of a trespass; cases where necessaries have been furnished to a wife wrongfully abandoned by her husband, although he has given notice that he will not be responsible; and cases in which the husband is permitted to recover the wife's funeral expenses from her estate.''

None of the cases referred to are similar to the case at bar. Neither the law alone, nor natural equity would require the plaintiff to pay the defendant for his services in the present case. Caldwell was under no duty to act in the premises. He was a mere volunteer, and did not act from any sense of duty imposed by law or by his relationship to the plaintiff. He may have been acting as he thought for the public good, but this fact did not make the plaintiff liable for his services. He was under no duty to perform them, and the plaintiff, neither by words, act, nor conduct, recognized, acquiesced in, or accepted his services as beneficial to it. There was no duty performed by Caldwell which would define the contract, nor was there any contract implied by the conduct of the plaintiff. The mere fact that Caldwell voluntarily preferred charges against the president of the plaintiff company, and thereby caused his removal, was not sufficient upon which to predicate a recovery in this case, and it could make no difference that his action resulted in a benefit to the plaintiff company.

It follows that the decree must be affirmed.