Brandon J. Harrison, Judge, concurring. InThe circuit court denied summary judgment given Watkins v. Arkansas Elder Outreach of Little Rock, Inc.—the case in which this court injected the “abuse of the corporate form” factor into the charitable-immunity doctrine. By affirming the circuit court’s decision today this court applied stare decisis. I therefore join the decision to affirm the denial of Progressive’s motion for summary judgment to the extent the majority holds solely that a legally important fact question exists on whether there has been a so-called abuse of the corporate form for the purpose of deciding whether charitable immunity should be conferred right now. Progressive established the supreme court’s eight Masterson v. Stambuck factors beyond a meaningful dispute, so today’s decision in this case, and the two companion cases, only require that a jury answer the corporate-form question: “Because the case at bar is one in which genuine issues of material fact remain to be tried as to whether Progressive abused the corporate form, we must affirm the court’s denial of summary judgment.” Maj. Op. at 66. When this court altered the common-law doctrine of charitable immunity in 2012, a number of questions and concerns arose. I briefly address some that come to mind. The beginning is a good place to start. The corporate-abuse factor that this court used in Watkins was transplanted from a case that did not involve charitable-immunity law. In K.C. Properties of Northwest Arkansas, Inc. v. Lowell Inv. Partners, LLC, 373 Ark. 14, 32, 280 S.W.3d 1, 15 (2008), our supreme court was asked to decide, in a phrase, whether “the corporate veil of the limited-liability companies should be pierced.” Here is the supreme court’s statement in K.C. Properties that was used four years ago to forge a new (ninth) factor to be considered when deciding whether to grant charitable immunity: | iaIt is a nearly universal rule that a corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock. In special circumstances, the court will disregard the corporate facade when the corporate form has been illegally abused to the injury of a third party. The conditions under which the corporate entity may be disregarded or looked upon as the alter ego of the principal stockholder vary according to the circumstances of each case. The doctrine of piercing the corporate veil is founded in equity and is applied when the facts warrant its application to prevent an injustice. Piercing the fiction of a corporate entity should be applied with great caution. The issue of whether the corporate entity has been fraudulently abused is a question for the trier of fact, and the one seeking to pierce the corporate veil and disregard the corporate entity has the burden of proving that the corporate form was abused to his injury. Id. at 32, 280 S.W.3d at 15-16 (internal citations omitted). Charitable immunity appears nowhere in the supreme court’s discussion above or elsewhere in that case because it had nothing to do with the usual context in which the piercing-the-corporate-veil doctrine has been used in Arkansas. The equitable doctrine this court borrowed from EC. Properties, one that has historically been applied “with great caution,” expressly requires an allegation that “the corporate form has been illegally abused to the injury of a third party.” Id., 280 S.W.3d at 15-16. The alleged illegal abuse in the cases decided today is that Progressive and other entities have been structured and operated in some entangled manner so that Progressive looks less profitable on paper than it really is so it may claim charitable immunity and be shielded from these lawsuits. The identifiable “injury,” I presume, is that the appellees’ lawsuits will abruptly end if immunity is conferred, though that is the potential consequence every time the issue is raised by a party. As I read the parties’ arguments, the appellees have really made a public-policy argument that Arkansas’s charitable-immunity law should not shield the particular business organization/operational structure of |13which Progressive is a part. However one characterizes the appellees’ argument, it found a champion in Watkins’ s ninth element. I am concerned that the ninth factor will soon, as a practical matter, swallow whole the other eight. Given today’s decisions, all eight Masterson factors can be decided for the entity seeking immunity, but as long as Watkins’s ninth one is disputed then immunity will not be given as a matter of summary-judgment law. Why is the ninth factor so “pivotal,” to use this court’s word in Watkins’! Has Watkins (and subsequent cases from this court) essentially neutralized the other eight in the supreme court’s decades-old case law? Now that three cases will be sent back to circuit court, we should turn to what happens next because some important procedural issues will likely arise. One is whether a circuit court should separate the returning immunity issue from the trial process that will address the merit of the appellees’ numerous substantive claims. No decision today discusses the appellees’ factual allegations in much detail (the three operative complaints together total nearly 100 pages) because the substantive allegations are legally unimportant for charitable-immunity analyses. We have not mandated bifurcation today, but common sense counsels that insulating immunity proceedings from those that address the merit of the appellees’ substantive claims can help ensure that the immunity question is not influenced by the underlying allegations. This is not a novel notion. If the mention of a party being insured, or the premature reference to the wealth of a defendant, can potentially prejudice personal-injury cases, see, e.g., Synergy Gas Corp. v. Lindsey, 311 Ark. 265, 843 S.W.2d 825 (1992), and Poff v. Elkins, 2014 Ark. App. 663, 449 S.W.3d 315, then litigating these cases’ merits before totally wrapping up the immunity issue could, at a minimum, unnecessarily entangle two separate legal processes. | uWhether or not a circuit court decides to separate the returning charitable-immunity question from a case’s merit, no one can avoid asking which party on remand has the burden to prove (presumably by a preponderance of the evidence) the abuse-of-the-corporate-form factor. We have yet to provide an answer, though one is important because it affects decisions the parties and circuit courts may face—like how to instruct the jury. I believe the appellees should have to prove that Progressive abused the corporate form after these cases are returned to the circuit courts. This position naturally follows from the piercing-the-corporate-veil doctrine that Watkins took from K.C. Properties, which requires that the party asserting some type of corporate abuse has occurred must prove that he was “abused to his injury,” whatever the phrase may mean. Finally, a point on the process of litigating charitable immunity and who decides disputed facts. Depending on which rule of civil procedure is used, either a circuit judge or a jury might decide factual disputes related to the immunity question. Here, because Rule 56 was used in all three cases, juries will be tasked to decide whether Progressive abused the corporate form in the charitable-immunity context. A second appeal would then be immediately available from each circuit judge’s decision to grant or deny immunity given the jury’s answer, presuming a party wanted to pursue another appeal. On the other hand, if parties proceed under Arkansas Rule of Civil Procedure 52 then a circuit judge would receive evidence relevant to deciding whether an entity was a charitable one under the Master son/Watkins line of cases and confer immunity or not. A party wanting to immediately appeal an adverse decision could promptly do so. An appellate court would then apply the appropriate standard of review (one that includes how the law was applied to h lithe facts and whether sufficient evidence supported the court’s factual findings) and affirm the court’s decision or reverse it. This process is arguably the more straightforward, consistent, and simplest one that parties and courts can prepare for and execute when dealing with charitable immunity. And from a judicial economy/party resources vantage point, one appeal, not two, is much more likely. The ship has sailed in these cases; but future litigants and circuit judges should consider whether a bench-trial process more faithfully embodies the often repeated tenet that charitable immunity is an issue of law that courts decide. David M. Glover, Judge, concurring. Though I agree with the majority’s decision, I write separately to express a belief that the idea of charitable immunity for nursing homes, in the present day of Medicare and Medicaid funding, is archaic and one whose time has passed. There are no present-day' nursing homes operating exclusively for a charitable .purpose. Further, it is a legal fiction that any nursing home today is entitled to charitable immunity simply because its legal form is structured to enable profits to be siphoned off to subsidiary for-profit companies—owned by the same people who own the “charitable” nursing home. Government payments for services are still payments for services, and writing off “what, Medicare or Medicaid does not pay” does not equate to providing free services. The long-range solution to this problem is for either our supreme court or our legislature to abolish the theory of charitable immunity for nursing homes altogether. Until then, it will be necessary, to arrive at the conclusion the majority held today—it is a question of fact as to whether a nursing home is entitled to charitable immunity. Therefore, I concur.